UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANDRE JACKSON,

                    Plaintiff,                    Case No. 2:23-cv-133

v.                                                Honorable Paul L. Maloney

UNKNOWN SURETY et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. In an order (ECF No. 4) entered on August 14, 2023, the Court referred the case to the *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program and stayed the case for any purpose other than mediation.

The order staying proceedings contemplates that counsel for the defendants—typically the Michigan Department of Attorney General representing employees of the Michigan Department of Corrections (MDOC)—will enter a limited appearance for purposes of the early mediation process. Where one or more defendants is not an employee of the Michigan Department of Corrections (MDOC), however, effecting notice of the early mediation opportunity proves to be more difficult and is not always possible.

Defendants Hetrick, LaCrosse, McCullum, Corrigan, Clark, Batho, Russell, McLean, Davidson, Grondin, Martin, Newcomb, Henning, Loridon, Wilkins, Bond, Ormshee, Watson, Ghallger, and Haase are, apparently, employees of the MDOC. Counsel has entered a limited appearance on their behalf. A review of the docket indicates that, to date, no attorney has entered

a limited appearance for Defendant O'Brien. At this time, the Court cannot conduct a complete mediation in this case where neither Defendant O'Brien nor counsel on his behalf has appeared. The protocol governing the early mediation program does not contemplate partial settlements.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). Sections 1915(e)(2) specifically provides that such screening can occur "at any time." *See* 28 U.S.C. § 1915(e)(2); *see also* 28 U.S.C. § 1915A(a) (noting that the court "shall review, before docketing, if feasible, or, in any event, as soon as practicable after docketing," complaints filed by prisoners seeking "redress from a governmental entity or officer or employee of a governmental entity"). The Court, therefore, will conduct such screening below to facilitate the possibility of mediation in this matter.

The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Surety, LaCrosse, McCollum, Corrigan, Clark, Batho, Russell, McLean, Davidson, O'Brien, Grondin, Martin, Newcomb, Loridon, Wilkins, Bond, Ormshee, Watson, Ghallger, and Haase for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss any state law claims against those individuals without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Bensel, Hetrick, and Henning: (1) Plaintiff's official capacity claims; (2) Plaintiff's Eighth Amendment claims; (3) Plaintiff's Fourteenth Amendment due process claims premised upon the issuance of false misconducts; (4) Plaintiff's Fourteenth Amendment equal protection claims; and (5) Plaintiff's civil conspiracy claims. Plaintiff's First Amendment individual capacity retaliation claims against Defendants Bensel, Hetrick, and Henning remain in the case.

<u>**Discussion**</u>

## I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Defendants Unknown Surety, Unknown Bensel, Prison Counselor A. Hetrick, Resident Unit Manager M. LaCrosse, Hearings Officer Unknown McCollum, Warden Unknown Corrigan, Assistant Warden Jeffrey Clark, Assistant Deputy Warden R. Batho, Legal Affairs M. McLean, VPP Unknown Davidson, Hearings Officer S. O'Brien, Sergeant Unknown Grondin, Lieutenant D. Martin, Corrections Officer S. Newcomb, Corrections Officer Unknown Henning, Sergeant Unknown Loridon, T. Wilkins, Sergeant Unknown Bond, Captain Unknown Ormshee, Lieutenant Unknown Watson, Officer D. Ghallger, and Officer Unknown Haase. Plaintiff names Defendant Surety in his or her individual capacity and the remaining Defendants in both their individual and official capacities.

Plaintiff's exhibits indicate that on July 31, 2021, Defendant Bensel issued a class I ticket for substance abuse to Plaintiff. (ECF No. 1-1, PageID.59.) Defendant O'Brien found Plaintiff not guilty. In the report, Defendant O'Brien noted that Plaintiff stated that he was not allowed to see the sergeant or get a drug test, and that the ticket was not written until the day after the incident.

Plaintiff also stated that if he had been drunk, Defendant Bensel would not have allowed him to go back to the dayroom but would have taken immediate action. (*Id.*) In the reasons for the finding, Defendant O'Brien stated that if Plaintiff had been intoxicated, it made no sense that he would have been allowed to return to the dayroom and, at the very least, Plaintiff would have been ordered to his bunk to sleep it off. (*Id.*) Defendant O'Brien also noted that shift command should have been notified but was not. (*Id.*) Defendant O'Brien concluded that without any further evidence, he could not find that Plaintiff had consumed alcohol. (*Id.*)

Subsequently, in October of 2021, Defendant Bensel issued another class I misconduct ticket to Plaintiff. (Compl., ECF No. 1, PageID.8.) Plaintiff was found not guilty and avers that this finding "ignited a revenge retaliation criminal enterpri[s]e." (*Id.*) For example, Plaintiff alleges that at some point in October of 2021, Defendant Bensel broke up a dice game in the 2-side bathroom and discovered a liquid substance, which he accused Plaintiff and two other individuals of possessing. Plaintiff asked Defendant Grondin to evaluate him because he was not under the influence, but Defendant Grondin failed to do so. Instead, Defendant Grondin allowed Defendant Bensel to write the ticket even though she knew it was false. Plaintiff asserts that Defendants Grondin and McCollum stated that there was no way that Plaintiff would be found guilty of the misconduct. Plaintiff asserts that the reason Defendant Bensel fabricated the ticket was because Plaintiff had beaten a previous ticket by Defendant Bensel. (Comp., ECF No. 1, PageID.8.) Defendant O'Brien subsequently found Plaintiff guilty even though Defendant Bensel never saw Plaintiff with the liquid, and the liquid was not in Plaintiff's area of control. (*Id.*) Finally, Plaintiff states that Defendant Bensel told Plaintiff "I got you dumb n**ger." (*Id.*, PageID.9.)

4

Plaintiff also attaches copies of numerous grievances and grievance responses to his complaint and asserts that his attempts to seek relief through the grievance process were repeatedly thwarted by Defendants.

Plaintiff alleges that Defendant Russell failed to take corrective action when he received a grievance rejection from Defendant McLean on behalf of Defendants Hetrick and Bensel. Plaintiff also asserts that Defendant Corrigan stated that he supported Defendant Bensel and F-Unit staff. (ECF No. 1, PageID.9.)

Plaintiff makes a conclusory assertion that he was subjected to racism, hatred, and homosexual abuse by unnamed MDOC employees. (*Id.*, PageID.10.)

Plaintiff alleges that Defendant Newcomb tampered with some of Plaintiff's legal mail, taking two affidavits, and also destroyed some of Plaintiff's legal research. Plaintiff wrote a grievance on Defendant Newcomb which was reviewed by Defendant Martin. Defendant Newcomb denied any wrongdoing and Defendant Martin denied the grievance without viewing any camera footage. Plaintiff claims that Defendant Newcomb was motivated by a desire to discriminate against Plaintiff on the basis of race. Plaintiff states that he was moved to the East part of URF in retaliation for writing the grievance. (*Id.*)

Plaintiff states that every time he attempted to bring up any policy violations, Defendants Bensel and Hetrick would put their fingers in Plaintiff's breakfast drink and call him derogatory racist names in retaliation. (*Id.*)

Plaintiff alleges that during a shakedown, Defendant Newcomb destroyed Plaintiff's grievances, legal mail, hearings packages, and a full civil suit and judicial review package. Defendants Loridon and Martin subsequently engaged in a cover-up to protect Defendant

Newcomb, apparently by participating in the denial of Plaintiff's grievance regarding the matter. (*Id.*, PageID.11; Grievance Response, ECF No. 1-1, PageID.63.)

Plaintiff alleges that after he was hired as a porter on first shift in F-Unit, Defendants Bensel and Hetrick were angry and attempted to have Plaintiff removed from his job by putting him on as many as fifteen probable cause urine tests, up to three tests daily over a period of less than five days. When Plaintiff questioned this, an employee in the school building stated it was to make sure Plaintiff's level was dropping. Plaintiff asserts that he has had zero positive tests for drugs since 2008 and only two substance abuse ethanol class I tickets. Because Plaintiff was only found guilty on one of the tickets, he was able to continue working as a porter. (*Id.*)

Plaintiff states that Defendant Hetrick indicated that if Plaintiff got some class I tickets, he would lose his porter job and she could transfer Plaintiff out of the unit. Thereafter, Defendant Bensel conspired with Defendant Henning to give Plaintiff a refusal class I ticket, since Plaintiff did not use drugs. On an unspecified date, Plaintiff went as usual to be tested when Defendant Henning began making remarks about the size of Plaintiff's penis and the color of his skin. Plaintiff refused to respond, so Defendant Henning said "you didn't let me see the dick again n****r." (*Id.* at PageID.12.) Defendant Henning then threw Plaintiff's urine sample in the trash and demanded that Plaintiff show him his "little black dick" again. (*Id.*) Plaintiff asked for a Sergeant and a dry cell, but Defendant Henning became more aggressive and refused. Plaintiff then asked to leave and when he made to exit the school building, Defendant Henning chased him down and forced him to return to the school building, where he made additional comments about Plaintiff's penis. (*Id.*) Plaintiff subsequently asked Defendant Bensel and non-party Corrections Officer Bumpstead for a PREA complaint but they just laughed. Defendant Bensel then called Defendant Henning to

tell him about the PREA complaint attempt. Plaintiff then called the hotline and filed a grievance on Defendant Henning. (*Id.*)

Defendant Henning retaliated by writing substance abuse and sexual misconduct reports on Plaintiff. (*Id.*) Plaintiff was questioned about the PREA complaint by the URF PREA Coordinator, but states that he has not heard anything since.

Plaintiff states that he filed an affidavit seeking to have Defendant O'Brien removed from hearing his misconduct ticket because Defendant O'Brien is biased. Defendant Newcomb then entered Plaintiff's cell and took grievances and affidavits off the top of Plaintiff's locker and threw them in the trash. Plaintiff wrote a grievance regarding the incident, but Administration refused to check the camera.

Plaintiff asserts that the twenty-three named Defendants engaged in a conspiracy to violate his rights under the First, Eighth, and Fourteenth Amendments. He also references violations of the Michigan Constitution. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Section 1983 Claims

### 1.    Claims Against Defendant Surety

Plaintiff indicates that he is naming Unknown Surety as a Defendant "on the official bond of a public officer for breach of bond and the circumstances so require the Court to direct the 'delivery' or assignment of the bond for prosecution." (ECF No. 1, PageID.16.) Presumably, Plaintiff believes that the other Defendants, as well as all MDOC officers, have performance bonds and seeks to sue the surety on the bond.

As an initial matter, nothing in Plaintiff's complaint leads the Court to conclude that Unknown Surety or a surety bond is a person that can be sued under § 1983. Moreover, the Court

recognizes that 28 U.S.C. § 1352 provides that "[t]he district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States." *See* 28 U.S.C. § 1352. Plaintiff's complaint, however, is devoid of any facts from which the Court could infer that "Defendants' performance bonds—if they exist at all—were executed under 'any law of the United States.'" *See Moore v. Whitmer*, No. 1:21-cv-117, 2021 WL 5194807, at *4 (W.D. Mich. Nov. 9, 2021), *aff'd*, 2022 WL 18862075 (6th Cir. Aug. 12, 2022).

Moreover, Plaintiff provides the address of Defendant Surety as the Secretary of State's Office on the 4th Floor of the Richard H. Austin Building in Lansing, Michigan. All of the various departments located on that floor of that building are part of the Michigan Department of State. Plaintiff may not maintain a § 1983 action against the Michigan Department of State or any of its various sub-offices. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that state departments are absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Therefore, the Court dismisses Plaintiff's federal claims against Defendant Surety.

### 2. Claims Against Defendants LaCrosse, Clark, Batho, Davidson, Wilkins, Bond, Ormshee, Watson, Ghallger, and Haase

Although Plaintiff has named LaCrosse, Clark, Batho, Davidson, Wilkins, Bond, Ormshee, Watson, Ghallger, and Haase as Defendants, he makes no allegations against these individuals. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendants LaCrosse, Clark, Batho, Davidson, Wilkins, Bond, Ormshee, Watson, Ghallger, or Haase in the body of his complaint. His allegations, therefore, fall far short of the minimal pleading standards set forth in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8 (requiring a "short and plain statement of the claim

showing that the pleader is entitled to relief"). Any federal claims against Defendants LaCrosse, Clark, Batho, Davidson, Wilkins, Bond, Ormshee, Watson, Ghallger, and Haase will, therefore, be dismissed.

### 3.    Claims Against Defendants Corrigan, Russell, McLean, Martin, and Loridon

In his complaint, Plaintiff contends that Defendants Corrigan, Russell, McLean, Martin, and Loridon failed to properly investigate or resolve Plaintiff's numerous grievances. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

11

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Corrigan, Russell, McLean, Martin, and Loridon encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff suggests only that they failed to investigate and denied his grievances, which is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff's conclusory allegations are insufficient to demonstrate that Defendants Corrigan, Russell, McLean, Martin, and Loridon were personally involved in the events described in Plaintiff's complaint.

Furthermore, to the extent Plaintiff suggests that these individuals violated his rights by failing to investigate his grievances and by denying his grievances, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983);

*Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, these Defendants did not deprive him of due process.

Moreover, these Defendants did not violate Plaintiff's First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, these Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were

13

improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable federal claim against Defendants Corrigan, Russell, McLean, Martin, and Loridon, and such claims will be dismissed.

### 4. Claims Against Defendant O'Brien

Defendant O'Brien is the hearing officer who found Plaintiff guilty of the class I misconduct ticket issued in October of 2021. Plaintiff contends that Defendant O'Brien should not have conducted the misconduct proceedings because she is biased.

Defendant O'Brien is a hearing officer whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *see also Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017); *Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007);

14

*Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554–55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivations of civil rights). The Court, therefore, will dismiss Plaintiff's federal claims against Defendant O'Brien on the basis of judicial immunity.

### 5.     First Amendment Claims

#### a.     Access to the Courts

Plaintiff contends that Defendant Newcomb tampered with his legal mail, destroyed his legal research, and destroyed his grievances and other legal property, including a "full civil suit and judicial review package." (Compl., ECF No. 1, PageID.11.) The Court, therefore, construes Plaintiff's complaint to assert a First Amendment access to the courts claim against Defendant Newcomb.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis*, 518 U.S. at 349; *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and

demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff's complaint is devoid of any facts regarding an underlying cause of action or a lost remedy. Plaintiff refers to attempts to exhaust his administrative remedies and asserts that certain Defendants attempted to thwart his use of the grievance process. Notably, however, Plaintiff was able to file the instant lawsuit despite not having the legal paperwork he claims he

lost. Accordingly, any intended First Amendment access to the courts claim against Defendant Newcomb will be dismissed.

### b.        Retaliation

Plaintiff contends that Defendants Bensel, Hetrick, Henning, and Newcomb retaliated against him in violation of the First Amendment.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that the various retaliatory acts occurred after he filed grievances and complaints, and also verbally complained about numerous incidents that occurred to him. Plaintiff, therefore, has adequately alleged protected conduct for purposes of his retaliation claims. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court considers Plaintiff's allegations regarding the second and third elements for each implicated Defendant below.

### (i)        Defendant Newcomb

In his complaint, Plaintiff vaguely alleges that Defendant Newcomb retaliated against him by destroying his legal property and tampering with his legal mail. (Compl., ECF No. 1, PageID.11.)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. Appx 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Even assuming that Defendant Newcomb acted adversely, Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendant Newcomb. Plaintiff has alleged no *facts* to support his speculative belief that Defendant Newcomb took the action noted above because of Plaintiff's grievances and complaints. Plaintiff's complaint does not even allege that Defendant Newcomb was aware of these grievances and complaints. The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claim against Defendant Newcomb.

### (ii)    Defendants Bensel, Hetrick, and Henning

Plaintiff alleges that after he successfully challenged a misconduct ticket issued by Defendant Bensel, Defendant Bensel retaliated against him by issuing another false misconduct ticket. Plaintiff alleges further that in response to Plaintiff's grievances and complaints, Defendants Bensel and Hetrick stuck their fingers in his breakfast drink and used racial, derogatory comments

against him. Plaintiff also suggests that Defendant Henning issued misconducts to him in response to Plaintiff's grievances and complaints. Taking these allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff's First Amendment retaliation claims against Defendants Bensel, Hetrick, and Henning may not be dismissed at screening.

### 6. Eighth Amendment Claims

Plaintiff also suggests that Defendants Bensel, Hetrick, and Henning's conduct violated his Eighth Amendment rights.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with

"'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.    Verbal and Sexual Harassment

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon verbal harassment against Defendants Bensel and Hetrick, as well as claims premised upon verbal and sexual harassment against Defendant Henning. Plaintiff claims that all three individuals used racial slurs against him, and that Defendant Henning sexually harassed him by making several comments about Plaintiff's penis. (Compl., ECF No. 1, PageID.12.)

As an initial matter, while unprofessional, allegations of verbal harassment or threats by prison officials towards an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Accordingly,

while the Court does not condone the use of racial slurs, any Eighth Amendment claims against Defendants Bensel, Hetrick, and Henning premised upon their use of such slurs will be dismissed.

Plaintiff further alleges that Defendant Henning made numerous comments about his penis during a urine test on an unspecified date. (Compl., ECF No. 1, PageID.12.) "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted). The *Rafferty* court found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by repeatedly demanding that the prisoner expose her breasts and masturbate while the official watched and intimidating her into complying. *Id.* at 1096.

Nonetheless, the Sixth Circuit has also concluded that that offensive sexual remarks do not rise to the level of an Eighth Amendment violation, even when coupled with minor, isolated incidents of sexual touching. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's

buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment).

*Rafferty*, however, is distinguishable from Plaintiff's claim. Plaintiff claims on one occasion, Defendant Henning made sexual remarks to him. Unlike in *Rafferty*, however, Plaintiff does not allege that Defendant Henning made any explicit sexual demands. Under these circumstances, Defendant Henning's comments did not evidence the type of coercive sexual demands at issue in *Rafferty*. Defendant Henning's behavior, while offensive and unprofessional, falls short of the severity necessary to state an Eighth Amendment claim. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Henning.

### b.        Other Conduct

Plaintiff also appears to suggest that Defendants Bensel, Hetrick, and Henning violated his Eighth Amendment rights by issuing him false misconducts, and that Defendants Hensel and Hetrick violated the Eighth Amendment by sticking their fingers in Plaintiff's breakfast drink. While Plaintiff alleges that these actions caused him mental and emotional distress, he fails to allege any facts showing that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, a prisoner cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.

In sum, all of Plaintiff's Eighth Amendment claims against Defendants Bensel, Hetrick, and Henning will be dismissed.

7.      **Fourteenth Amendment Claims**

a.      **Deprivation of Property**

As noted above, Plaintiff contends that Defendant Newcomb tampered with his legal mail, destroyed his legal research, and destroyed his grievances and other legal property. The Court, therefore, construes Plaintiff's complaint to assert a Fourteenth Amendment procedural due process claim against Defendant Newcomb.

Any intended due process claim, however, is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, state post-deprivation remedies are available to him. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-

deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Therefore, Plaintiff's due process claim against Defendant Newcomb is subject to dismissal.

### b.      False Misconducts

Plaintiff suggests that Defendants Bensel and Henning issued numerous false misconducts to him. The Court, therefore, construes Plaintiff's complaint to assert due process claims against Defendants Bensel and Henning premised upon the issuance of these false misconducts.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD.

Plaintiff does not provide facts regarding the nature of each of the misconducts he received. However, with respect to any class II and III misconducts Plaintiff may have received, the Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003);

*Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Moreover, Plaintiff does not allege that the class I misconduct had any effect on the duration of his sentence—and he cannot. Plaintiff is serving, *inter alia*, two life without parole sentences imposed in 2008 for convictions of first-degree murder and conspiracy to commit first-degree murder. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=622337 (last visited Feb. 5, 2024). Even if Plaintiff were serving an indeterminate sentence less than life, prisoners serving sentences for offenses committed after 2000 can accumulate only "disciplinary time" for major misconduct convictions. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

Furthermore, Plaintiff does not allege facts suggesting that any misconduct convictions resulted in "atypical and significant hardship[s]." *Sandin*, 515 U.S. at 487. Plaintiff fails to allege any facts whatsoever regarding what sanctions, if any, he received as a result of the misconduct. For these reasons, Plaintiff fails to state Fourteenth Amendment procedural due process claims based upon the alleged false misconducts.[1]

---

[1] To the extent Plaintiff intended to raise substantive due process claims regarding the alleged false misconducts, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v.*

### c.  Equal Protection

Plaintiff makes a conclusory assertion that Defendant Newcomb discriminated against him because he is black. He also asserts that Defendants Bensel and Henning discriminated against him by using racial slurs. The Court, therefore, construes Plaintiff's complaint to assert Fourteenth Amendment equal protection claims against Defendants Newcomb, Bensel, and Henning.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)).

Here, although Plaintiff alleges that Defendant Newcomb discriminated against him because of his race and Defendants Bensel and Henning used racial slurs, Plaintiff fails to identify

---

*Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X*, 175 F.3d at 378. Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff. Moreover, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.

any comparator prisoners. While the Court does not condone the use of racial slurs, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. In sum, Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination).

Moreover, to the extent that Plaintiff intended to assert equal protection claims in a class-of-one case, he fails to state such a claim. To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis*, 679 F.3d at 441 (emphasis removed) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc.*

*v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (citation omitted)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Even viewing Plaintiff's equal protection claims as class-of-one claims, Plaintiff's equal protection claims fail to state a claim upon which relief may be granted. Plaintiff fails to allege facts suggesting that he was treated disparately from similarly situated persons in any respect. Plaintiff's conclusory allegations simply do not suffice to state a claim.

Accordingly, for all of the reasons set forth above, any Fourteenth Amendment equal protection claims asserted against Defendants Newcomb, Bensel, and Henning will be dismissed.

### 8.    Civil Conspiracy Claims

Throughout his complaint, Plaintiff suggests that the named Defendants engaged in a conspiracy to violate his civil rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681,

695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565–66 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Plaintiff provides no allegations regarding any agreement among any of these individuals, other than the fact that they are employed at URF and all of them are employed by the MDOC. Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, Plaintiff's conspiracy claims under § 1983 will be dismissed. Moreover, because Plaintiff asserts only a civil conspiracy claim against Defendants Grondin and McCollum, these Defendants are properly dismissed.

29

### 9.      Official Capacity Claims

The Court's dismissal of various claims and Defendants leaves Plaintiff's First Amendment retaliation claims against Defendants Bensel, Hetrick, and Henning. Plaintiff has named these individuals in both their official and personal capacities.

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Plaintiff's official capacity claims for damages will, therefore, be dismissed.

An official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that

the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff's complaint is devoid of any facts suggesting that Defendants Bensel, Hetrick, and Henning are engaged in any ongoing violations of federal law. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Accordingly, the Court will dismiss Plaintiff's official capacity claims in their entirety. Nonetheless, Plaintiff may proceed on his individual capacity First Amendment retaliation claims against Defendants Bensel, Hetrick, and Henning.

### B.    State Law Claims

Plaintiff references violations of the Michigan Constitution throughout his complaint. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Further, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Because Plaintiff's federal claims against Defendants Surety, LaCrosse, McCollum, Corrigan, Clark, Batho, Russell, McLean, Davidson, O'Brien, Grondin, Martin, Newcomb, Loridon, Wilkins, Bond, Ormshee, Watson, Ghallger, and Haase have been dismissed, the Court will dismiss Plaintiff's state claims against these individuals without prejudice. Because Plaintiff continues to have pending federal claims against Defendants Bensel, Hetrick, and Henning, the Court will not decline to exercise supplemental jurisdiction over Plaintiff's state law claims against those three Defendants at this time.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Surety, LaCrosse, McCollum, Corrigan, Clark, Batho, Russell, McLean, Davidson, O'Brien, Grondin, Martin, Newcomb, Loridon, Wilkins, Bond, Ormshee, Watson, Ghallger, and Haase will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss any state law claims against those individuals without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss, for failure to state a claim, the following claims against Defendants Bensel, Hetrick, and Henning: (1) Plaintiff's official capacity claims; (2) Plaintiff's Eighth Amendment claims; (3) Plaintiff's Fourteenth Amendment due process claims premised upon the issuance of false misconducts; (4) Plaintiff's Fourteenth Amendment equal protection claims; and (5) Plaintiff's civil conspiracy claims. Plaintiff's First Amendment individual capacity retaliation claims against Defendants Bensel, Hetrick, and Henning remain in the case.

An order consistent with this opinion will be entered.

In light of the fact that limited appearances have been entered on behalf of the remaining Defendants for purposes of mediation, the case will continue stayed in the mediation program.

Dated:   February 28, 2024                        /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge